United States District Court
Southern District of Texas
**ENTERED**
September 14, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NUMBER H-25-0335 |
| | § | |
| SIMON MICAH FLORES, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Simon Micah Flores ("Defendant") is charged with one count of Transportation of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).[1] Pending before the court is Defendant's Motion to Suppress (Docket Entry No. 33). The Government has filed its Supplemental Response in Opposition to Defendant's Motion to Suppress ("Government's Supplemental Response") (Docket Entry No. 41) (sealed). For the reasons explained below, Defendant's Motion to Suppress will be denied.

## I. Background

The Bank Secrecy Act requires financial institutions to monitor financial transactions and report information relevant to investigations, risk assessments, proceedings, intelligence, and/or counterintelligence activities to regulatory authorities, including the United States Customs and

[1]Indictment, Docket Entry No. 13, pp. 2-3. All page numbers reference the pagination printed at the top of the page by the court's Electronic Case Filing system.

Border Protection's National Targeting Center ("NTC"). See 31 U.S.C. § 5311. On November 24, 2023, Block Inc. ("Block"), a money service business governed by the Bank Secrecy Act, observed a $35 financial transaction on its CashApp mobile application between an account owned by Defendant and a sponsored teen account.[2] In review of Defendant's account, Block noted that the payments were made in exchange for nude images.[3] On November 8, 2024, PayPal Holdings, Inc. ("PayPal"), another money service business governed by the Bank Secrecy Act, observed a $41 financial transaction between an account owned by Defendant and an account in Brazil.[4] PayPal suspected that Defendant's account was engaged in the trafficking of child pornography.[5] Both Block and PayPal reported these transactions to several law enforcement agencies, including the NTC.[6]

After receiving Block's and PayPal's reports, the NTC learned that Defendant was scheduled to travel through Bush Intercontinental Airport ("IAH") from Cancun, Mexico, on May 25, 2025.[7] The NTC, concerned that Defendant may be importing prohibited child sexual abuse material into the United States, flagged Defendant in its system to alert staff at the port of entry.[8]

---

[2]Government's Supplemental Response, Docket Entry No. 41, p. 2 (sealed).

[3]Id.

[4]Id. at 3.

[5]Id.

[6]Id.

[7]Id.

[8]Id.

On May 25, 2025, Defendant arrived at IAH from Cancun and presented himself for admission into the United States.[9] When the United States Customs and Border Protection officers ("CBPO") checked his identity, they saw the NTC flag and referred Defendant to secondary inspection.[10]

While Defendant was in secondary inspection, CBPO conducted an inspection of Defendant, including a manual review of his cell phone.[11] During the search of the cell phone CBPO located images and videos that met the federal definition of child pornography.[12] CBPO did not engage in a forensic extraction or utilize any forensic tools to review Defendant's phone.[13]

On June 24, 2025, Defendant was charged with one count of Transportation of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(1) and (b)(1), and one count of Possession of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2).[14] On July 10, 2026, Defendant filed a Motion to Suppress.[15] The Government filed a response on July 17, 2026, and Defendant filed a reply on July 30, 2026.[16]

---

[9]Id. at 4.

[10]Id.

[11]Id.

[12]Id.

[13]Id.

[14]Indictment, Docket Entry No. 13, pp. 1-3.

[15]Defendant's Motion to Suppress, Docket Entry No. 33.

[16]Government's Response in Opposition to Defendant's Motion to Suppress, Docket Entry No. 35; Reply to Government's Response to Defendant's Motion to Suppress, Docket Entry No. 36. On August 5, 2026, the court, finding that the Defendant's Motion to Suppress and the (continued...)

## II. Analysis

Defendant argues that his financial records were obtained in violation of the Fourth Amendment.[17] Defendant also argues that his phone was searched in violation of the Fourth Amendment.[18]

### A. Block's and PayPal's reports to law enforcement did not violate the Fourth Amendment.

Defendant argues that the information provided by Block and PayPal is the result of an intrusion into his reasonable expectation of privacy.[19] Defendant also argues that Block and PayPal were acting as Government agents.[20]

"[N]o interest legitimately protected by the Fourth Amendment is implicated by governmental investigative activities unless there is an intrusion into a zone of privacy." United States v. Miller, 96 S. Ct. 1619, 1622 (1976) (internal quotation marks omitted). In Miller the Supreme Court held that a defendant had no expectation of privacy in his financial records kept

---

[16](...continued)
Government's Response failed to provide a clear statement of the relevant issues or facts, ordered the Government to submit an amended response and ordered Defendant to file a reply to the Government's amended response. Order, Docket Entry No. 37. The Government filed a Supplemental Response in Opposition to Defendant's Motion to Suppress (with Exhibits 1-7) on August 19, 2026, Docket Entry No. 41 (sealed). Defendant has not filed a reply to the Government's Supplemental Response.

[17]Defendant's Motion to Suppress, Docket Entry No. 33, pp. 9-19.

[18]Id. Defendant also argues that (1) the border search at IAH was unlawful because it was triggered by unlawfully obtained records and (2) the search of his phone was unlawful because the Government cannot rely on records that were obtained unlawfully to establish reasonable suspicion. Id. at 12-19. These arguments fail because, as discussed below, (1) Defendant's financial records were not obtained unlawfully and (2) the Government did not need reasonable suspicion to search Defendant's phone because it was a routine border search.

[19]Id. at 9-12.

[20]Id. at 11-12.

by his bank because the information was voluntarily revealed to a third party. Id. at 1624. ("[T]he Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in the third party will not be betrayed."). Id. In coming to its decision in Miller, the Court also explained that "even if the banks could be said to have been acting solely as Government agents in transcribing the necessary information . . . there would be no intrusion upon the depositors' Fourth Amendment rights." Id.

Defendant did not have a reasonable expectation of privacy in the financial information turned over by Block and PayPal. Block and PayPal reported Defendant's transactions to several law enforcement agencies in compliance with their obligations under the Bank Secrecy Act.[21] Like the reports in Miller, the reports here contained information that Defendant voluntarily provided to Block and PayPal through his use of their mobile applications.[22] Because Defendant has no reasonable expectation of privacy in the information he voluntarily provided to Block and PayPal, Block and PayPal's reports of Defendant's financial transactions did not violate the Fourth Amendment.

**B. The search of Defendant's phone was a routine border search.**

Defendant argues that the search of his phone was outside the scope of a routine search if CBPO "used the phone for something more intrusive than a manual review of user-accessible content."[23]

---

[21]Government's Supplemental Response, Docket Entry No. 41, pp. 7-8 (sealed).

[22]Id.

[23]Defendant's Motion to Suppress, Docket Entry No. 33, p. 15.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S CONST. amend. IV. "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." Riley v. California, 134 S. Ct. 2473, 2482 (2014). "[T]he border-search exception allows officers to conduct 'routine inspections and searches of individuals or conveyances seeking to cross . . . borders' without any particularized suspicion of wrongdoing." United States v. Castillo, 70 F.4th 894, 896 (5th Cir. 2023) (quoting United States v. Aguilar, 973 F.3d 445, 449 (5th Cir. 2020)) (emphasis in original). Under the border-search exception a law enforcement officer may manually search cell phones. Id. at 897-98. A manual search of a cell phone entails an officer "'manually travers[ing] the contents of the traveler's electronic device;'" it does not include viewing "'deleted or encrypted files.'" Id. at 897. The Fifth Circuit has held that "no reasonable suspicion [or warrant] is necessary to conduct" a manual cell phone search at the border. Id. at 898.

During the secondary inspection of Defendant CBPO opened Defendant's Telegram application, which remained resident on Defendant's device, and located 10 videos and 3 images of child pornography.[24] After searching the Telegram application CBPO reviewed Defendant's photo gallery, including his "Recently Deleted" folder, which remained resident on Defendant's device.[25] The search of his photo gallery revealed additional images of child pornography.[26] CBPO did not

---

[24]Government's Supplemental Response, Docket Entry No. 41, p. 9 (sealed).

[25]Id. at 9-10.

[26]Id.

engage in a forensic extraction or utilize any forensic tools to review Defendant's phone at any point during the search.[27]

Because CBPO engaged in a manual search of Defendant's phone, the search was a routine border search under Castillo and did not violate the Fourth Amendment.

## III. Conclusions & Order

For the reasons explained above, Defendant's Motion to Suppress (Docket Entry No. 33) is **DENIED**.

**SIGNED** at Houston, Texas, on this the 14th day of September, 2026.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE

[27] Id. at 11.